The next matter on calendar is Va Bene Trist v. Washington Mutual, 12-15169, and just before the clock starts, I do want to ask a question. I notice that – are you Mr. Arboleda? Yes, ma'am. I lived on a street called Arboleda growing up, so I recognize that. But you have someone at council table. Are you going to use the whole time, or – I am going to use the whole time. Kara Carlson assisted with the brief, so I think that she earned the right to sit at the table. Well, absolutely. Always good to see what – how it works out. All right. You may proceed, then. May it please the Court, my name is Carlos Arboleda. With me in the courtroom is Kara Carlson. We represent Va Bene Trist, a Nevada limited liability company that filed for Chapter 12 bankruptcy protection in 2011. The issue before the Court is fairly simple. It is? Yes, sir. Does the bank have standing to make the claims that they assert in the bankruptcy court? We respectfully submit that the bankruptcy judge erred when it allowed the claimants to proceed after having filed late proof of claims, but more importantly, having failed to show a chain of title that led their economic interest back to the original mortgage holder, which was – What – I used to do a lot of banking law, so this was an interesting case for me. But at the end of the day, basically you have somebody who borrowed a lot of money and paid it back, and the question is in the bankruptcy court whether the priority is still there. If there is a valid lien, then you don't have to file anything in the schedules for it to be recognized, right? You can acknowledge that. Not quite, Your Honor. If I may add my interpretation. There was no lien here, per se, until the bankruptcy court stepped in and created the lien through its equitable powers. That issue is a promissory note that was not signed or negotiated or involved my client in any way, shape, or form. Okay, so I understand. Your point is because of the mechanized way in which this was handled that there wasn't any. Are you disputing the fact that at one point your client signed – your client's predecessor, I should say – signed a promissory note and signed a security instrument? The chain of title, when the original mortgage by acceptance and access was signed, was a predecessor interest to my client, an entity named Los Pintos. That's the entity that signed. When my client bought the – No, they're related, are they not? Your client and the predecessor are related in some way, right? They are related insofar as they have the same manager, but not at the same ownership. My client, the owner of that entity is Tessa Menken, whose father is David Menken. David Menken is the manager and owner of the prior entity. But it's a familial kind of arrangement, as we might find, say, in a nominee tax case, right? I'm going to hesitate a little bit and push back on that, Your Honor, because ultimately, by creating that intellectual leap, you are actually trying to – or the bank is actually trying to hold the daughter liable for the debts of the father. And that may have been okay in medieval times, but no longer acceptable now. I want you to be able to get to the rest of your contention here, but I just want to be sure we have the basics understood. You do agree that the predecessor entity signed a note and a – I don't know whether a deed of trust or a mortgage. Do you agree with that? I would agree with that. Okay. So then the question is, is that note and that mortgage – is it a deed of trust? I assume they use deeds of trust. There is a deed of trust. Were those instruments vitiated in some way? My apologies. What does the court mean by vitiated? Meaning, was there effectiveness? Did they become void? Did they become unenforceable? Yes. When there was a payoff by Mr. Mencken, the – those mortgages were satisfied. You're claiming that the mortgage and the note that is the underlying subject of this lawsuit, that that was paid in full and the deed of trust was fully reconveyed. Is that your position? That is our position, and the question really runs to who paid off that first mortgage. And our position is Mr. Mencken paid off the mortgage with money from an entity that hasn't made an appearance here or is not part of these proceedings. Okay. Well, I guess what's important to me is whether it remains in effect. In other words, if it was paid in full – let's just take a real simple transaction. You loan me some money on my house. I secure it with a deed of trust. If I pay you the note, you reconvey the deed of trust. It's all over. In this situation, bank made a loan. There was a deed of trust on the property. Your contention is that the note was fully paid off to the bank. Is that right? That's not my understanding, but is that your position? My position is that the original mortgage by acceptance and the second mortgage by access was indeed paid off with a proceeds that was – We don't care where the money came from. As long as – if the bank was fully satisfied, if each and every aspect of the loan was paid in full, then we've got one thing. On the other hand, if the note was not paid in full, and all we're talking about, which is what I understand, is whether or not the deed of trust, in some form, remained viable and retained its priority on the property. Isn't that really what we're talking about here? We're talking about, I think, apples and oranges, Your Honor. There's no question or any dispute that the original deed of trust was satisfied, paid off, and that's gone away. The original deed of trust, so that we're clear, the VBT, which is Mengen's daughter, when Mengen took the loan at issue here and signed this note, the proceeds were used to remove liens on the property of this daughter, or at least so the bank claims. That is factually correct, but it needs to be put in context. The reason that Mengen paid off his daughter's mortgage was as part of an agreement with the daughter to purchase an option. Whatever the reason, as I understand it, he took the money from the loan and he paid off liens on the property owned by VBT. Correct. And essentially the bank says, that was our money, in effect. And that's what they're, to the extent that I can follow this, that's what their equitable subrogation is all about. But that's the problem, though. I mean, the bank, quote, unquote, is not the lender that lent the original money. If you look at the deed of trust. Does it matter? It does matter, because. Well, this is a note signed in blank, apparently. No, the. Endorsed in blank. It was endorsed in blank. And we have put into question the endorsement. The person that signed the endorsement is a woman by the name of Renee Burry. She was never produced at trial. Research on the Internet shows that she never worked for AHM, the New York Corporation. So when we filed our second objection to their proof of claim, that issue needed to be proved that by the bank. And they never bothered coming to the table with any evidence that suggested that there was a chain of title running all the way back to AHM New York. The only thing they could produce was a. I assume the argument is, again, to the extent that I can follow this, is that they're not necessary to prove a chain of title if they have a note that's endorsed in blank. Not correct, Your Honor. You have to. When the endorsement is put into question, you have to show that you had authority to put the endorsement. How did your client slash Mr. Menken, how did they put that in issue? We put it in issue on the second claim objection. There's three proof of claims and two claim objections. And the second one specifically said, we want you, bank, to prove the truth and validity of the endorsement. They never bothered doing that. But there's a presumption. If I understand Nevada law correctly, there is a presumption that a note endorsed in blank is presumed valid. That presumption is revocable upon the demand that you prove out the endorsement. Or that you provide some evidence to the contrary. It's a shift in burden of proof, practically. The filing of the proof of claim says you have a valid proof of claim. The objection then says, the objection shifts the burden from the debtor back to the creditor saying, hey, now you need to show me that the debt is valid and that you have come to hold the paper in a legally sufficient way. You're saying, counsel, that under Nevada law, all you have to do to reverse the presumption of a blankly, a note endorsement, rather, is to say, we dispute that. You don't have to come forward with any evidence that suggests that, in fact, it's an invalid signature or there's some practice where this kind of thing is fraudulent. In Arizona, that's exactly the law. But we're talking Nevada here, aren't we? No, no, we're talking Arizona because the property is in Arizona and the bankruptcy was filed in Arizona and the mortgage was created in Arizona. Well, let me sort of cut to this. This is sort of the elephant in the room. It seems that David Menken, who created VBT and manages VBT, allegedly for the benefit of his daughter, seeks to avoid VBT's repayment of $1.190 million loan by arguing, first, that the loan was never secured by the underlying real property because another of his entities, Los Pintos, owned it at the time of the loan, and second, that the appellees could not show proper chain of title. So it seems that there's an inequitable result that we're talking about here, at the very least. So if you want to compel that inequitable result, I think it would have to be as a matter of law, but I don't see a matter of law here because the lower court reasonably found that the loan was intended to be secured by real property and the note endorsed in blank is payable to the bearer. So that's kind of the elephant in the room for me here. So basically the question is, is it fair? Well, it's pretty clearly, it looks like it's pretty clearly not. So you need to show that this is compelled as a matter of law because if it's an equitable determination by the court, you don't win. And going to the heart of the question is, yes, it is fair because the bank doesn't get to reform a contract and bring someone else just because they're a better party. The bank has legal remedies against Mr. Mankin, which they have failed to exercise fully. In fact, Mr. Mankin brought a lawsuit against... But doesn't his daughter get a windfall of owning property that... No, the daughter doesn't get a windfall because the daughter, you know, engaged in a fair and fully documented transaction with her dad to sell the dad an option. The dad paid off the mortgage as part of that transaction and at the end of the day... Well, he did a lot of things. There were numbers of things going back and forth, back and forth. I mean, it reminds me of looking at a case that's a white-collar crime case in terms of looking at all the transactions that go on here. The long and short of it, Your Honor, is that from the bank's perspective, they wanted to substitute Mr. Mankin for Babenitris. The reality, though, is they never have tried to pierce the corporate veil. They never have gone and sought some form of claim that Babenitris is the instrumentality of Mr. Mankin. Do you want to save some time for rebuttal? Yes, ma'am. Okay. Thank you. Good morning. Good morning, Your Honors. My name is Tim Thomas and I represent J.P. Morgan Chase Bank and what I'll call the W. Malt Trust. After a full trial on the merits of bankruptcy, Judge Nielsen made specific findings of fact and conclusions of law on the record. The long and short of it is, is that Judge Nielsen did not believe what Mankin had to say. And what Mr. Mankin had to say was that American Home Mortgage made a loan of over a million dollars that was going to be used to pay off prior debts, but that bank was willing to make that loan on an unsecured basis. That's what he was trying to get Judge Nielsen to believe and Judge Nielsen simply didn't believe it. Did he testify, did Mankin testify that it was not his signature on the note? No. Did he deny it? No. No. And did he admit it? Oh, he admitted that the documents were his, that he signed those documents. Just by way of background, and I won't belabor the facts, but just prefatory to my argument, this saga kind of begins in 2001 when Los Pintos, Mankin's entity, acquires the property from funds that were loaned to it by Bob Anytrist. Years later, the property is transferred to Bob Anytrist in satisfaction of that debt. In the meantime, in the interim, when Los Pintos owned this property, the property was financed by Mr. Mankin. Mr. Mankin would take the property in his own name, take out a loan, and then put it back in Los Pintos. That happened on multiple occasions. By the time the property ends up with Bob Anytrist, we have a loan, actually two loans on the property, but the first position loan of over a million dollars made by American Home Mortgage. Mr. Mankin now has the property in Bob Anytrist, which he is the manager of. He did all of this himself. And he now has the property refinanced at American Home Mortgage. And he signs documents. It's all in the briefs, but numerous documents as part of a loan made to him personally where he says, I'm giving you a deed of trust. It says it in the note. It says it in the deed of trust. And it says it in numerous other documents that he was giving American Home Mortgage a deed of trust. The loan proceeds were, in fact, used to pay off the prior debt on Bob Anytrist's property. And then, the next year, Mr. Mankin stops making payments on the loan. The bank starts to foreclose. And he tries to get an injunction in state court, which the state court says no, leading to this bankruptcy and this adversary. That's how we get here. And there's a few issues involved here. First of all, let me address the one about standing. Judge Nielsen made a factual decision that the bank, in fact, had demonstrated that the Walmart Trust, in fact, held this debt. Now, let me just preface this again. This issue is not being raised because there's a legitimate concern that there's another lender that purports to hold this debt. This is another attempt by Mr. Mankin to avoid this obligation. It's plain and simple. There's no other lender out there. At trial, Vicki Landis testified as the custodian of the bank that JPMorgan Chase Bank was the servicer acting on behalf of the WMALT Trust and provided the original promissory note. The original promissory note held. So, there's not another note. The original's not out there held by somebody else. It was presented in court, signed in blank. And the courts are... And that note was never paid in full, right?  And that note is signed and endorsed in blank. And as the court noted, that means it becomes a bearer instrument. And so, the person who possessed it is entitled to enforce it. So, there was significant evidence presented at trial that the WMALT Trust held this obligation. And Arizona law is very clear. We pointed out in the brief that the security follows the debt. And therefore, the WMALT Trust was entitled to enforce the instrument. I think the key issue here is the equitable relief, though, that Judge Nielsen thought was appropriate. Under the doctrine of equitable subrogation or replacement of mortgage, they're really the same thing. Depends on if it's the same lender that you're paying off or not. Well, does... Does Volbeny Trist have any equities on its side here? I can't think of one, Your Honor. Did the judge below think of any? Didn't think of any. The only argument that has even been made is about Mr. Mencken's daughter. There was never any testimony from Mr. Mencken's daughter. I think a reasonable inference can make... could be made that this was simply another maneuver by Mr. Mencken who was trying to get this property free and clear. But when this transaction started, this property owned by Volbeny Trist was encumbered by two deeds of trust. And at the end of the transaction... Well, so it's not a situation where his daughter had, like, separate money and owned some property and somehow her dad involved her in a situation where he kind of stole her money and now is putting her on the hook? Not at all. When Volbeny Trist acquired the property, it was encumbered by two deeds of trust already. That was the situation going in. And now, what Mr. Mencken was trying to do here is to come up with a situation where that property would be... he would get a loan, but... So the result that he's asking for, or that the appellants are asking for, would be that they wouldn't say that they still owe the money, but they get the property without any indebtedness on it? Well, Mr.... And then you couldn't go after the daughter? You couldn't go after the daughter personally. Mr. Mencken was technically obligated on the note, which I'm sure that he's judgment-proof of. But that's the outcome, that they were seeking. And under the doctrine of equitable subrogation, that's exactly what that doctrine is intended to avoid. In the most recent pronouncement on that doctrine under Arizona law, in the source court decision, which was cited in the brief, the court went through the very simple analysis about this rule. It's very simple in the restatement of property. It tells us that whenever a lender, and it could also be an equity purchaser, as it was in that particular case, but when a lender comes in and pays off a prior debt, which is exactly what happened here, the court will, in order to avoid unjust enrichment, allow that lender to be subrogated to the rights of the prior lender. This is a picture-perfect case for that doctrine. And it's done to... Let's say if the court below had found that Mr. Mencken was correct, and that he got that money without the property being secured, then that could have been a situation where the law would compel that, oh, well, you blew it. I think, if I understand your question right, I think you're right. If there had been an express agreement by the lender, okay, we will take this on an unsecured basis, I think you're right. The outcome could be different. But that's the exact factual inquiry that Judge Nielsen made. But that's what he's asking... That was what he was asking the court to find below. Absolutely. Mr. Mencken testified that the bank agreed to this, and Judge Nielsen found that to be remarkable, and contrary to every single loan document. So, again, I'm back to where we were before. Yes, you're right, Your Honor. That could be a different result if the facts were different and if there were different fact findings. So who had the note that was endorsed in blank, payable to the bearer? Who had that? At the time of trial? Yeah. The original note was held by J.P. Morgan Chase Bank as servicer for the W. Malt Trust. And so who produced it at the trial? J.P. Morgan Bank, as servicer, produced that original promissory note at trial. Okay. So in this particular case, and we can kind of come back to the equities here, Vabenitrist was not prejudiced by this at all. It walked out, at the end of the day, the same position it was before. And Judge Nielsen found that to allow Vabenitrist to walk away with unencumbered property would be an unjust enrichment to Vabenitrist. So given the court's fact finding, the court then appropriately applied the doctrine of equitable subrogation in order to avoid an unjust result. Vabenitrist also claims that it was a bona fide purchaser under 544A3, and therefore it takes free of this. But that is not, in fact, not the case, as we pointed out in our brief. And by the way, I just want to point this out. We cited on this subject in our brief the Collier's text, and we made a mistake. We put down it was Section 544.032 when it should have been 544.022. It was driving me crazy as I was getting ready for argument that I'm looking at this section, and it was the next one over. So I wanted to make that clear, and I apologize for that. We'll get over it. I figured you would, but I wanted to make that clear. But when a debtor files, and it does have this BFP status, but it takes subject to what is of record. So although the debtor's actual knowledge may be ignored, what is of record is not ignored, and that's exactly what the Collier's text talks about. In addition, as we pointed out in a footnote in the brief, the debtor has to bring an action to avoid liens under 546A within two years of filing. So even if they were right on this point, it was incumbent upon the debtor to bring an action to avoid the bank's lien, which they did not do. The fourth point that they raised very briefly is that a proof of claim needed to be filed in a timely fashion. Well, it was. There was a timely proof of claim, but a secured creditor does not have to file a proof of claim. It's not necessary. But in any event, there was one filed. There were amendments filed later to clarify who the current owner of the debt was. Those amendments are proper and result in no prejudice whatsoever. And finally, there are evidentiary issues that have been raised in the brief saying that Judge Nielsen improperly allowed certain testimony and documents. These were proper exercises of Judge Nielsen's discretion. He believed that that proper foundation had been laid. The rules are simple, though, and straightforward, that even if you were to determine that one of his evidentiary rulings were wrong, it doesn't result in reversal unless it results in an impact of a significant right. These were harmless error. There's no serious contention made in the brief that the outcome would have been different. I would add very quickly, parenthetically, they've raised this issue about Vicki Landis and that she was allegedly, in their words, giving untruthful testimony by not giving her full name. At one point in time, through marriage or divorce or whatever, apparently they are contending her name was Vicki Novotny Landis. This just happens to be the last name of my partner that tried the case with us. It's an interesting coincidence. I don't know why they think it's such a big deal. I would, in fact, submit it actually demonstrates the desperation that Mr. Macon has to try to avoid this result. But in any event, none of this is in the record. This argument that they've made about her last name and how she must be a liar because of this, it's not in the record at all, so this Court should disregard it. At the end of the day, after a full trial on the merits, the question is, I would submit, that, I guess, two questions. Was Judge Nielsen's fact finding supported by the evidence? And it was. And did he reach a fair and equitable outcome? And he did. And subject to any other questions, I will conclude. The only question I would have is, when we look at Judge Nielsen's findings, which were extensive, how are we to review that? What's the standard of review? Well, you certainly have to give deference to his fact finding. And unless there was clear error, even if you were to disagree with something, unless there's clear error. Clear error is the standard. So the opposing counsel, if he disagreed, would have to show by the evidence in the trial that there was clear error on behalf of Judge Nielsen. I would submit, yes. And I can give you an example, which I'll go back to. The key issue in the case was, or at least one of the key issues was, was Mr. Macon's story that it was to be an unsecured loan believable? Well, Judge Nielsen said it wasn't. He didn't agree with that. And that was supported by a lot of evidence. And I would just look at the loan documents that Mr. Macon signed, saying time and time again, he was going to secure this with a lien against the property. Thank you, Your Honors. Thank you for your argument. Let me circle back to the concept that Tessa received something for nothing here. The fact is, the money with which Los Pintos used to buy the property, generally buy the property, came from, by Benetrist. Well, what about, though, the fact that it was front and center in there, that your client's contention was that the loan was unsecured, and that, and that, and the court didn't believe him? So what do we do with, I mean, there, it's reviewed for clear error. So why is that wrong? I mean, because there is evidence to the contrary that would certainly indicate that it may not have been. The findings of fact, obviously, have a different standard review. But the application of the equitable principles, that's at the noble review. And I'm going to submit to the court, given the type of evidence they submitted. But did the lower court find against your client in terms of that the loan was unsecured? Presumably, as part of that, the court did have some objection to that. Our position is it wasn't unsecure as to Mr. Menken. Mr. Menken did have an option. All right, but if the court found that, and then the court exercises its equitable powers, how can that be wrong if the court found that as a? But the question is secure as to what? Okay? And the court made a leap, an intellectual leap that wasn't allowed to make, which was secure as to the property as opposed to secure as to the interest of Mr. Menken on the property. Mr. Menken did have an option. There's no question as to that. The court did not buy your argument. I will agree with that. But to say that there was no evidence to support the court finding that, that's where I have trouble. Well, you know, let's parcel it out a little bit more. What evidence did the court rely on? And it was the testimony of a person that did not provide a name, unsigned redacted documents that do not show that they are the holder of the note, and a bunch of other discrepancies. The court has to acknowledge that at every single point, the judge basically gave a hand up to the bank. The motions of sanction, that was pretty much ignored. The legal theory, that was given to the bank through the motions or summary judgment. So at some point, I mean, there was — Okay. You're down to no time, so wrap it up in 30 seconds, please. Based on the findings of the — based on the briefs, we submit that the court should reverse the findings of the bankruptcy court and hold the lien as unsecured. Thank you both for your argument in this matter. This will stand submitted.
judges: Korman, Callahan, Smith